UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/28/2022
```

VALERIE SANTIFUL and TAMEKA RHODEN,
*individually and on behalf of all others similarly
situated*,

                            Plaintiffs,

        -against-

WEGMANS FOOD MARKETS, INC.,

                            Defendant.

No. 20-CV-2933 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

        Plaintiffs Valerie Santiful and Tameka Rhoden, individually and on behalf of others similarly situated (collectively, "Plaintiffs"), bring this putative class action against Wegmans Food Markets, Inc. ("Defendant" or "Wegmans") asserting that Defendant's Gluten Free Vanilla Cake Mix (the "Product") is labeled in a way that is misleading to consumers. Specifically, Plaintiffs bring claims for violation of New York's General Business Law Sections 349 and 350, negligent misrepresentation, breach of express warranty, breach of implied warranty of merchantability, violation of the Magnuson Moss Warranty Act, fraud, and unjust enrichment. Before the Court is Defendant's motion to dismiss Plaintiffs' Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).

        For the following reasons, Defendant's motion to dismiss is granted.

## BACKGROUND

        The following facts are drawn from Plaintiffs' Amended Complaint (First Amended Class Action Complaint "Am. Compl.", ECF No. 12) and are assumed as true for purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Wegmans distributes, markets, labels, and sells[1] its store brand Gluten Free Vanilla Cake Mix with a front label stating "Vanilla," "Naturally Flavored," "Rich & Indulgent," and "No Artificial Colors, Flavors or Preservatives," as depicted in the image below:



(Am. Comp. ¶¶ 1–3.)  This Product is sold in 14-ounce boxes to consumers in Wegman's retail stores in at least eight states, including New York, Massachusetts, Pennsylvania, Virginia, and New Jersey.  (*Id.* ¶ 2.)

Plaintiffs allege the Product's label is misleading because the Product is not mainly flavored from vanilla, contains artificial flavors, and does not taste like vanilla.  (*Id.* ¶¶ 4–6.) Plaintiffs allege that, contrary to the front label representations, the Product itself is "not flavored

---

[1] The Amended Complaint alleges that Wegmans also manufactures this product.  (Am. Compl. ¶ 1.)  However, Defendant clarified that while Wegmans markets and sells baking mixes under its store brand, it does not manufacture the products and instead obtains them from a supplier.  (*See* ECF No. 17 at 4.)

mainly from vanilla and has no vanilla, or at most, a de minimis, or trace amount of vanilla." (*Id.* ¶ 4.)  The Product is instead flavored from non-vanilla sources of ethyl vanillin, vanillin, maltol, and piperonal.[2]  (*Id.* ¶ 5.)  The flavor of the Product "lacks the complexity and flavor notes associated with vanilla because vanillin has never been synonymous with vanilla." (*Id.* ¶ 68.)  The presence of non-vanilla flavors in the Product is also inferred from the Product's ingredient list, which lists "Natural Flavor" as the only flavoring ingredient.  (*Id.* ¶ 33 (listing the ingredients "Sugar, Rice Flour, Potato Starch, Tapioca Starch, Corn Flour, Baking Powder (Sodium Acid Pyrophosphate, Baking Soda, Cornstarch, Monocalcium Phosphate), *Natural Flavor*, Sea Salt, Guar Gum, Xanthan Gum, Soy Flour") (emphasis added).)  "Natural Flavor" is a technical term for an ingredient which is a mix of flavors and does not consist only of vanilla.  (*Id.* ¶ 34.)  Plaintiffs claim this ingredient list is misleading because does not identify vanillin as an ingredient or otherwise disclose the presence of vanillin and ethyl vanillin.  (*Id.* ¶ 65.)  Further, Plaintiffs claim "lab testing reveals that the 'Natural Flavor' in the Product consists mainly of ethyl vanillin and vanillin, both from non-vanilla sources." (*Id.* ¶ 36.)

Plaintiff Valerie Santiful purchased the Product on more than one occasion, including in December 2019, at a Wegmans store in Virginia Beach, Virginia.  (*Id.* ¶ 90.)  Plaintiff Tameka Rhoden purchased the Product on more than one occasion, including in November 2019, at a Wegmans store in Montvale, New Jersey.  (*Id.* ¶ 91.)  Plaintiffs bought the Product "expect[ing] a vanilla taste, and that such taste would come exclusively and/or predominantly from vanilla beans and did not expect a taste of vanillin." (*Id.* ¶ 93.)  Had Plaintiffs known about the true source of

---

[2] Plaintiffs claim ethyl vanillin, vanillin, maltol, and piperonal are "artificial flavors." (*Id.* ¶¶ 5, 40.)  However, as discussed *infra*, these flavors can either be artificial or natural depending on their derivation, *see* 21 C.F.R. § 101.22(a)(1), and the Amended Complaint is devoid of non-conclusory allegations that the flavors used in Defendant's product are of the artificial sort. *See Wynn v. Topco Assocs., LLC*, No. 19-CV-11104 (RA), 2021 WL 168541, at *1 n.3 (S.D.N.Y. Jan. 19, 2021).

the vanilla flavor in the Product, they would not have purchased it or would have paid less for it. (*Id.* ¶ 75.)  Plaintiffs allege that they are not alone in this regard and that consumers are willing to pay more for products labeled "vanilla—naturally flavored" instead of "artificially flavored" or "does not taste like real vanilla."  (*Id.* ¶¶ 69, 71–72.)  Plaintiffs allege the Product's branding and packaging misled consumers who want a vanilla product containing flavoring mainly from vanilla beans and tastes like vanilla.  (*Id.* ¶¶ 71–72.)  As a result, Defendant sold more of the Product, at a premium of approximately $2.89 per 14 ounces as compared to other similar products presented in a non-misleading way.  (*Id.* ¶¶ 74, 76.)

Plaintiffs filed the operative class action complaint on November 20, 2020 on behalf of all purchasers of the Product who reside in New York, Virginia, and New Jersey, asserting claims against Defendant for (1) violation of New York General Business Law Sections 349 and 350, (2) negligent misrepresentation, (3) breach of express warranty, (4) breach of implied warranty of merchantability, (5) violation of the Magnuson Moss Warranty Act, (6) fraud, and (7) unjust enrichment. (ECF No. 12.)  Plaintiffs seek both monetary damages and injunctive relief that would require Defendant to correct the Product's allegedly misleading label.  Defendant moved to dismiss the amended complaint on February 26, 2021.  (ECF No. 16.)

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  Factual allegations must "nudge[] [a plaintiff's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  A claim is plausible when the plaintiff pleads facts which allow the court to draw a reasonable inference the defendant is liable.  *Iqbal*, 556 U.S. at 678.  To assess the sufficiency of

a complaint, the court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). While legal conclusions may provide the "framework of a complaint," "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678–79.

## DISCUSSION

Plaintiffs assert claims against Defendant for (1) violations of sections 349 and 350 of the New York General Business Law, (2) negligent misrepresentation, (3) breach of express warranty, (4) breach of implied warranty of merchantability, (5) violation of the Magnuson Moss Warranty Act, (6) fraud, and (7) unjust enrichment. (*See* Am. Compl.) Defendant seeks to dismiss all claims for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6). (*See* Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint ("Def.'s Mot."), ECF No. 17.) The Court addresses each claim below.

## I.   New York General Business Law Claims

Plaintiffs' first cause of action arises under sections 349 and 350 of the New York General Business Law ("GBL"). Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce," and section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce." GBL §§ 349 & 350.

To state a plausible claim under sections 349 and 350 of GBL, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (citing *Koch v. Acker, Merrall & Condit Co.*, 944 N.Y.S.2d 452, 452 (2012)). The allegedly deceptive acts or representations must be misleading to

"a reasonable consumer." *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 324 (2002). Although the question of whether a business practice or advertisement is misleading to the reasonable consumer is generally a question of fact, *see Hidalgo v. Johnson & Johnson Consumer Cos., Inc*., 148 F. Supp. 3d 285, 295 (S.D.N.Y. 2015), it is "well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).

### A. Plaintiffs Fail to Plausibly Allege That the "Vanilla" Label Is Misleading

Plaintiffs claim the terms "vanilla" and "naturally flavored" on the front label of the Product are misleading because they imply that the Product's flavor is derived predominantly from real vanilla when in fact the Product contains other artificial flavors and none or de minimis amounts of natural vanilla.  (Am. Compl. ¶¶ 4–6, 54.)  Plaintiffs claim these are statements regarding the substantive, quantitative, qualitative, compositional, and/or organoleptic attributes of the Product and are material to reasonable consumers because consumers today seek to avoid artificial flavors for health and nutritional purposes and will pay a premium for natural flavoring. (*See id.* ¶¶ 41, 69, 71, 110.)

For the purposes of this motion, the Court accepts Plaintiffs' allegations that the Product is not predominantly flavored by natural vanilla extract and that a reasonable consumer cares about what portion of the vanilla flavor in a product is derived from the natural vanilla.  (*Id.* ¶¶ 4–6, 41, 61, 67–68, 71.)  Nevertheless, the Court finds that Plaintiffs have failed to plausibly allege that a reasonable consumer would conclude that the Product's label implies that the Product's flavoring was derived predominantly from natural vanilla extract.

The Amended Complaint's allegations that consumers expect the Product to be flavored mainly or predominantly with flavoring from vanilla beans are conclusory statements that the

Court is not required to accept. *See Iqbal*, 556 U.S. at 678. The Amended Complaint does not substantiate these allegations in any manner. *See Wynn v. Topco Assocs., LLC*, No. 19-CV-11104 (RA), 2021 WL 168541 (S.D.N.Y. Jan. 19, 2021) (discussing similar claims regarding a vanilla almond milk product as lacking any support on how consumers interpret "vanilla" to mean "flavored with exclusively natural vanilla"); *cf. Pichardo v. Only What You Need, Inc.*, No. 20-cv-493 (VEC), 2020 WL 6323775, at *1, *4 (S.D.N.Y. Oct. 27, 2020) (discussing consumer survey data offered to support an allegation of reasonable consumers' interpretations). The complaint merely states that consumers "want a vanilla flavored product that contains flavoring mainly from vanilla beans and tastes like vanilla." (Am. Compl. ¶ 71.) A large portion of the complaint broadly discusses food label regulations and actions by the Flavor and Extract Manufacturers Association ("FEMA") and others in "the flavor industry" addressing the issue of misleading practices related to the labelling of vanilla foods. (Am. Compl. ¶¶ 27–32, 42–45, 55, 58.) These allegations do not relate to the Product specifically or provide any support for the claim that a reasonable consumer would interpret the "vanilla" and "naturally flavored" terms on the Product's front label to mean the Product is predominantly flavored with vanilla beans. *See, e.g.*, *Wynn*, 2021 WL 168541, at *3 (finding plaintiffs' discussions of federal labeling regulations as lacking because complaint "does not allege that reasonable consumers are aware of these complex regulations, much less that they incorporate the regulations into their day-to-day marketplace expectations.").

Furthermore, Plaintiffs' claims of a misleading vanilla label have been repeatedly rejected in near-identical lawsuits involving vanilla products in this District. *See, e.g.*, *id.* at *3 ("Plaintiffs have failed to plausibly allege that a reasonable customer would in fact conclude that the word 'vanilla' on a product's front label implies that the product's flavoring was derived exclusively from natural vanilla extract, such that the front label would be misleading," even if the difference

between natural and artificial flavoring is material to the consumer); *Pichardo*, 2020 WL 6323775, at *3 (holding that plaintiff failed to allege that label was misleading where the label "does not state that it is 'made with vanilla extract' or even contain the words 'vanilla extract.'"); *Steele v. Wegmans Food Markets, Inc.*, 472 F. Supp. 3d 47 (S.D.N.Y. 2020) (finding vanilla label on ice cream not misleading where the "Wegmans container does not mention vanilla beans, or bean exact, and even if vanilla or bean exact is not the predominant factor"); *Cosgrove v. Blue Diamond Growers*, No. 19-cv-8993 (VM), 2020 WL 7211218, at *3 (S.D.N.Y. Dec. 7, 2020) (finding vanilla-flavored almond milk not misleading "because a reasonable consumer would associate the representation of 'Vanilla'—with no additional language modifiers—to refer to a flavor not to vanilla beans or vanilla extract as an ingredient."); *Barreto v. Westbrae Natural, Inc.*, 518 F. Supp. 3d 795, 806 (S.D.N.Y. 2021) (finding complaint failed to plausibly allege a product's label would be likely to deceive or mislead a reasonable consumer where "[t]he ingredient panel states the product contains 'Natural Vanilla Flavor With Other Natural Flavors'").  This Court agrees with the analyses in those cases and similarly finds that neither the front label nor the ingredient panel of the Product claim that the Product's predominant source of vanilla flavor comes exclusively from real vanilla.  Notably, the court in *Pichardo* found that plaintiffs failed to adequately plead a material misrepresentation where "the label on [d]efendant's protein drink does not state that it is 'made with vanilla extract' or even contain the words 'vanilla extract,' [and finding] no basis . . . to conclude that a reasonable consumer would . . . believe that all (or even most) of the vanilla taste comes from vanilla extract."  *Pichardo*, 2020 WL 6323775, at *3.  Similarly, Wegman's Product does not state that the vanilla cake mix is made with vanilla extract or make any representations regarding vanilla extract.  Accordingly, Plaintiffs have failed to plausibly allege that a reasonable consumer would see the label on the Product and be misled to conclude the vanilla

flavor derived predominantly from real vanilla.  *See Wynn*, 2021 WL 168541, at *3; *Barreto*, 518 F. Supp. at 806 (dismissing similar claim where "[t]here [was] no claim anywhere on the packaging that natural vanilla is the predominant source of the vanilla flavor.").

The Court is not persuaded by the cases relied on by Plaintiffs to urge a contrary conclusion.  (*See* Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss the First Amended Complaint "Pl.'s Opp.", ECF No. 18 at 9–10.)  Plaintiffs rely on *Mantikas v. Kellogg*, 910 F.3d 533 (2d Cir. 2018), which held that plaintiffs had sufficiently alleged that the label on a box of Cheez-It crackers was misleading when the label stated, "made with whole grain," even though the crackers contained more white flour than whole wheat flour.  The Second Circuit held that the mere fact that the crackers did contain some whole grain was insufficient to defeat the lawsuit, because the box's bold-faced "Made With Whole Grain" claim arguably "communicate[d] to the reasonable consumer that the grain in the product [was] predominantly, if not entirely, whole grain."  *Id.* at 637.  Moreover, it was irrelevant to the analysis that the ingredient list on the back of the box clarified that enriched white flour was the predominant ingredient, since "reasonable consumers should not be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Id.* at 637 (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008)).  But *Mantikas* is distinguishable because the product label was an express claim about ingredients, and strongly suggested that that the crackers were made predominantly or exclusively with whole grain.  *See Wynn*, 2021 WL 168541, *4.  In contrast, the Product's front label makes no claims about the ingredients constituting the flavor but merely states that it is "vanilla," "naturally flavored," and that it is "rich and indulgent."  The label does not otherwise state the cake mix is made with real vanilla extract or otherwise suggests that the product is flavored with any vanilla

extract.  Plaintiffs' reliance on *Sharpe v. A&W Concentrate Co.*, No. 19-CV-768 (BMC), 2020 WL 4931045, at *5 (E.D.N.Y. Aug. 24, 2020) is inapposite for similar reasons.  *See Wynn*, 2021 WL 168541, *4.  The product in *Sharpe* was advertised as "Made With Aged Vanilla" even though the product was made with predominantly artificial flavor.  The Product here does not make any claims about the ingredient of the vanilla cake mix.

As discussed above, Plaintiffs have not plausibly alleged that Defendant's use of the words "vanilla" and "naturally flavored" on its cake mix product, without more, represents a claim that the product is predominantly flavored from vanilla extract.  Accordingly, the Court finds that Plaintiffs have failed to state a claim that the front label of the Product is misleading.

### B.  Plaintiffs Fail to Allege That the Ingredient List Fails to Disclose "Artificial Flavors"

Plaintiffs also claim the ingredient list on the Product is misleading "because it does not identify vanillin as an ingredient nor discloses the presence of artificial flavors such as vanillin and ethyl vanillin" and does not otherwise clarify the "Natural Flavor" term on the front label.  (Am. Compl. ¶¶ 33, 65.)  Plaintiffs claim a "lab testing" "reveals" that the Product is made from non-vanilla sources.  (*Id.* at 7–8.)  Defendant argues Plaintiffs' proffered lab analysis is worthless where Plaintiffs "do not plead who conducted these analyses, what type of analyses they are, or what methodologists were followed."  (Def.'s Mot. at 17.)  Further, Defendant points out that even *arguendo* Plaintiffs tested the Product and found those non-vanilla flavors, piperonal and maltol are natural flavors, not artificial flavors.  (*Id.* at 19.)

The Court finds that Plaintiffs have failed to plausibly allege the ingredient list fails to disclose "artificial flavors."  As an initial matter, Plaintiffs allege that the Product is made of artificial flavors based on their proffered lab analysis.  This lab analysis contains no information as to the testing methodology, the date, time, or place of the testing, who conducted the testing,

10

and what the exact product tested was.  Without any information about the alleged lab analysis, Plaintiffs offer it as their only support that the Product is in fact made of artificial flavors. However, even the data offered does not appear to conclusively support Plaintiffs' allegations. Indeed, Plaintiffs admit that their analysis showed "the Product contains at most three compounds associated with vanilla." (Am. Comp. ¶ 39.)  This analysis is thus insufficient to support Plaintiffs' otherwise conclusory statements as to the ingredients of the Product.  *See Steele*, 472 F. Supp. 3d at 51 (rejecting a similar analysis).

Most devastating to Plaintiffs' claim is that the alleged "artificial flavors" themselves are not in fact "artificial."  Plaintiffs claim the predominant flavoring in the Product is ethyl vanillin, vanillin, maltol, and piperonal.  (Am. Compl. ¶ 40.)  But all these flavors can be either artificial or natural depending on how they are derived.  *See Wynn*, 2021 WL 168541, at *5 (discussing the same and citing to 21 C.F.R. § 101.33).  The Amended Complaint does not include allegations that the non-vanilla flavors in the Product are artificially derived.  Rather, the complaint merely notes that ethyl vanillin, vanillin, maltol, and piperonal are present in the Product.  Absent any factually substantiated allegations that these flavors are in fact not derived from natural sources, the Court finds Plaintiffs have failed to allege the presence of artificial flavors and therefore their claims about the ingredient list fails.

Because the Court concludes that the Product's labeling would not mislead a reasonable consumer, Plaintiffs' claims under sections 349 and 350 of the GBL are dismissed.  It is therefore not necessary to reach Defendant's argument that these claims are preempted by federal law.  *See Barreto*, 518 F. Supp. 3d at 806.

## II.     Other Claims

Plaintiffs also assert claims for negligent misrepresentation, breach of express warranty, breach of implied warranty of merchantability, violation of the Magnuson Moss Warranty Act, fraud, and unjust enrichment.  These claims, which largely hinge on the core theory of consumer deception, all fail as a matter of law.  *See Barreto*, 518 F. Supp. 3d at 806 (dismissing claims for negligent misrepresentation, breach of warranty, fraud, and unjust enrichment on the basis that the court "already determined that [plaintiff] has failed to allege that the product's labeling would be likely to deceive or mislead a reasonable consumer").

### a.  Negligent Misrepresentation

Under New York law, a claim for negligent misrepresentation requires the plaintiff to plausibly allege "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *Marc J. Bern & Partners LLP v. U.S. Legal Support, Inc.*, No. 17 Civ. 6771 (ER), 2018 WL 2943784, at *6 (S.D.N.Y. June 11, 2018) (citing *J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148 (2007)).  "A special relationship may be established by 'persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that  reliance  on  the  negligent misrepresentation is justified.'" *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180 (2011) (quoting *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (1996)).  "[G]enerally, a special relationship does not arise out of an ordinary arm's length business transaction between two parties." *Marc J. Bern*, 2018 WL 2943784, at *6 (quoting *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 87 A.D.3d 287, 296–97 (2011)).  Factors bearing on this inquiry include "whether the person making the representation held or appeared to hold unique or special expertise; whether a special

relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Id.* at *6. Because negligent misrepresentation sounds in fraud, it is subject to Rule 9(b)'s heightened pleading standards. *See, e.g.*, *Yoomi Babytech, Inc. v. Anvyl, Inc.*, No. 20 CIV. 7933 (ER), 2021 WL 4332258, *13 (S.D.N.Y. Sept. 22, 2021).

As discussed above, the Court finds that Plaintiffs have not plausibly alleged that the Product's label impart incorrect information to consumers.  Furthermore, Plaintiffs have not plausibly alleged the existence of a special or a privity-like relationship in order to bring a negligent misrepresentation claim.  Plaintiffs claim that a duty exists "based on defendant's position as an entity, which has held itself out as having special knowledge and expertise in the production, service, and/or sale of the product type."  (Am. Compl. ¶ 123.)  But case law is clear that the transactions alleged are insufficient to establish a special relationship for the purposes of a negligent representation. *See, e.g.*, *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 166–67 (S.D.N.Y. 2021) (collecting cases on how basic commercial transactions do not give rise to a special relationship); *Wynn*, 2021 WL 168541, at *6 (concluding the same); *Sarr v. BEF Foods, Inc.*, No. 18-cv-6409 (ARR) (RLM), 2020 WL 729883, at *6–7 (E.D.N.Y. Feb. 13, 2020) (finding no special relationship where the alleged misrepresentations were on a food product's label, and finding no privity absent a direct buyer-seller relationship between the parties); *see also Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 584 (2d Cir. 2005) ("no duty of care arises" for purposes of a negligent misrepresentation claim when the alleged misrepresentation is "directed at a faceless or unresolved class of persons") (internal quotation marks omitted). Accordingly, Plaintiffs' negligent misrepresentation claim fails.

### b.  Breach of Express Warranty

To state a claim for an express breach of warranty under New York law, plaintiffs must plead "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014).  As discussed, Defendant's product does not state the cake mix is made predominantly with natural vanilla flavor and a reasonable consumer would not interpret the representation of "Vanilla Cake Mix" to make this claim.  Such "[g]eneralized statements by the defendant . . . do not support an express warranty claim if they are such that a reasonable consumer would not interpret the statement as a factual claim upon which he or she could rely." *Ault v. J.M. Smucker Co.*, 13-cv-3409 (PAC) 2014 WL 1998235, at *6 (S.D.N.Y. May 15, 2014); *see also Barreto*, 518 F. Supp. 3d at 806.  Accordingly, Plaintiffs' breach of express warranty claim fails.

### c.  Breach of Implied Warranty of Merchantability

A breach of implied warranty of merchantability occurs when the product at issue is "unfit for the ordinary purposes for which such goods are used."  N.Y. U.C.C. Law § 2-314.  The Amended Complaint claims that the cake mix does not taste like vanilla but does not otherwise allege that the cake mix is unfit for human consumption.  *See, e.g.*, *Barreto*, 518 F. Supp. 3d at 807 (dismissing implied warranty of merchantability claim because "there were no allegations that the soymilk beverage was unfit for . . . human consumption"); *Silva v. Smucker Nat. Foods, Inc.*, No. 14-CV-6154 (JG), 2015 WL 5360022, at *11 (E.D.N.Y. Sept. 14, 2015) (dismissing implied warranty claim because "[w]here the sale of a food or beverage is concerned, courts have ruled that the product need only be fit for human consumption to be of merchantable quality.").  Plaintiffs

argue this claim is viable because the Product was not "not capable of passing without objection in the trade." (Pl.'s Opp. at 20.)  But even on this basis, the claim fails for the same reasons as the express warranty claim.  *See* Barreto, 518 F. Supp. 3d at 807.  Accordingly, Plaintiffs' breach of implied warranty of merchantability claim fails.

### d.  Magnuson Moss Warranty Act

Plaintiffs bring a claim under the Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq.*  (Am Compl. at 17).  "To state a claim under MMWA, plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law."  *Garcia v. Chrysler Gr. LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015).  Defendant argues that this claim should be dismissed because Plaintiffs do not identify any statements on the label that warranty a product free from defect nor identity anything on the labels that constitute a promise that a product will meet a specified level of performance.  (Def.'s Mot. at 22.)  The Court agrees and, along with the same reasons discussed above as to why Plaintiffs do not have viable warranty claims, finds Plaintiffs' MMWA claim fails.

### e.  Fraud

To state a claim of fraud under New York law, Plaintiffs must allege (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff.  *Schlaifer Nance & Co. v. Estate of* Warhol, 119 F.3d 91, 98 (2d Cir. 1997).  A claim of fraud must be alleged with the particularity required by Rule 9(b), Fed. R. Civ. P., which "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."  *Fin. Guar. Ins. Co. v. Putnam*

*Advisory Co., LLC*, 783 F.3d 395, 403 (2d Cir. 2015) (quotation marks omitted).  Rule 9(b) permits a plaintiff to allege scienter generally, but the Second Circuit has "repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent."  *United States ex rel. Tessler v. City of New York*, 712 Fed. App'x 27, 29 (2d Cir. 2017) (summary order) (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)).

As discussed above, the Court finds that Plaintiffs have failed to allege a material misrepresentation of fact or omission because a reasonable consumer would not conclude that the Product's label communicates that the cake mix's flavor derives predominantly from real vanilla. Furthermore, Plaintiffs fail to plead facts that give rise to an interest of fraudulent intent.  The Amended Complaint merely contains conclusory statements that Defendant's intent "is evinced by its failure to accurately identity the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and mislead consumers."  (Am. Compl. ¶ 140.)  This is insufficient.  *See Barreto*, 518 F. Supp. 3d at 808 (dismissing the fraud claim for the same reasons).  Accordingly, Plaintiffs' fraud claim fails.

### f.  Unjust Enrichment

Under New York law, an unjust enrichment claim requires "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."  *Kaye v. Grossman*, 202 F.3d 611, 616 (2d. Cir. 2000) (internal quotation marks omitted).  Plaintiffs have failed to allege that any gains to Defendant would be unjust because they have not plausibly alleged that a reasonable customer would be misled or deceived by the Product's label.   *See, e.g.*, *McVetty v. TomTom N. Am., Inc.*, No. 19 CV 4908 (NSR), 2021 WL 965239, at *8 (S.D.N.Y. Mar. 13, 2021).   Accordingly, Plaintiffs' unjust enrichment claim also fails.

### III.     Injunctive Relief

Plaintiffs seek injunctive relief for Defendant "to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws." (Am. Compl. at 19.)  Plaintiffs' request is denied because the underlying claims on which injunctive relief is sought have failed.

### IV.     Leave to Amend

Although the Court grants Defendant's motion to dismiss, it also grants Plaintiffs leave to file a Second Amended Complaint. *See* Fed. R. Civ. P. 15(a)(2). To be viable, any amended complaint would have to plead non-conclusory, substantiated allegations to the effect that (a) a reasonable consumer would actually believe that the word "vanilla" on the product's front label implies that the product's flavoring is predominantly from genuine vanilla extract; and/or that (b) the ethyl vanillin, vanillin, maltol, and piperonal used in Defendant's vanilla cake mix product are not derived from natural sources, such that they must be deemed artificial flavors, *see* 21 C.F.R. § 101.22(a)(1).  Although the Court is skeptical that Plaintiffs can make such a showing, in light of Rule 15(a)(2)'s "permissive standard," *see Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015), it will nonetheless permit Plaintiffs to file an amended complaint—if and only if they have a good faith basis to do so. *See Noskov v. Roth*, No. 19-CV-7431 (RA), 2020 WL 4041125, at *9 (S.D.N.Y. July 17, 2020).

### CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.  Plaintiffs are granted leave to file an amended complaint.  If Plaintiffs choose to do so, Plaintiffs will have until February 28, 2022 to file a Second Amended Complaint.  Defendant is then directed to answer or otherwise respond by March 30, 2022.  Failure to timely amend will result in the claims being

deemed to be dismissed with prejudice.  The Clerk of Court is respectfully directed to terminate

the motion at ECF No. 16.

Dated:    January 28, 2022                                    SO ORDERED:
          White Plains, New York

                                                    _____
                                                          NELSON S. ROMÁN
                                                       United States District Judge