USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/10/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VALERIE SANTIFUL and TAMEKA RHODEN, *individually and on behalf of all others similarly situated*,

                    Plaintiffs,

-against-

WEGMANS FOOD MARKETS, INC.,

                    Defendant.

No. 20-CV-2933 (NSR)

**OPINION AND ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiffs Valerie Santiful and Tameka Rhoden, individually and on behalf of others similarly situated (collectively, "Plaintiffs"), bring this putative class action against Wegmans Food Markets, Inc. ("Defendant" or "Wegmans") asserting that Defendant's Gluten Free Vanilla Cake Mix (the "Product") is labeled in a way that is misleading to consumers. Specifically, Plaintiffs bring claims for violations of New York's General Business Law Sections 349 and 350, breach of express warranty, breach of implied warranty of merchantability, violations of the Magnuson Moss Warranty Act, fraud, and unjust enrichment.[1]  Before the Court is Defendant's motion to dismiss Plaintiffs' Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").

For the following reasons, Defendant's motion to dismiss is GRANTED.

---

[1] Plaintiffs withdrew their negligent misrepresentation claim and their request for injunctive relief. (*See* Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Second Amended Complaint ("Plf. Opp.") at 1, n.1–2, ECF No. 27.)

**BACKGROUND**

I.    **Factual Background**

The following facts are drawn from Plaintiffs' Second Amended Complaint ("SAC," ECF No. 21) and are assumed as true for purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Wegmans distributes, markets, labels, and sells its store brand Gluten Free Vanilla Cake Mix with a front label stating "Vanilla," "Naturally Flavored," "Rich & Indulgent," "Food You Feel Good About," and "No Artificial Colors, Flavors or Preservatives,"[2] along with a picture of blueberries and a strawberry, as depicted in the image below:



(SAC ¶¶ 1–2.) This Product is sold in 14-ounce boxes to consumers in Wegmans's retail stores across eight states, including New York, Massachusetts, Pennsylvania, Virginia, and New Jersey.

---

[2] The "No Artificial Colors…" claim will be referred to as "No Artificial Flavors."

(*Id.* ¶ 70.)

Plaintiffs allege that, contrary to the front label representations, the Product itself is not "Naturally Flavored" and contains artificial flavors. (*Id.* ¶ 3.) Plaintiffs claim a laboratory analysis reveals the Product is instead flavored from ethyl vanillin at a quantity of 3.07 PPB, as depicted in the image below:

| MS Scan # | Area Integration | Peak Assignment | Conc. PPB w/w |
|---|---|---|---|
| 795 | 9314 | butyric acid | 0.45 |
| 812 | 252037 | hexanal | 12.25 |
| 859 | 23336 | furfural | 1.13 |
| 901 | 112743 | hexyl alcohol | 5.48 |
| 929 | 9211 | 2-heptanone | 0.45 |
| 945 | 15350 | heptanal | 0.75 |
| 998 | 5493 | alpha-pinene | 0.27 |
| 1017 | 108346 | hexanoic acid | 5.27 |
| 1025 | 9845 | heptyl alcohol | 0.48 |
| 1034 | 65046 | benzaldehyde | 3.16 |
| 1044 | 10831 | 6-methyl-5-hepten-2-one | 0.53 |
| 1053 | 33565 | 2-pentyl furan + trace of dimethyl trisulfide | 1.63 |
| 1066 | 20056 | octanal | 0.97 |
| 1170 | 63876 | guaiacol | 3.11 |
| 1178 | 204797 | nonanal | 9.96 |
| 1197 | 23521 | maltol | 1.14 |
| 1231 | 183540 | octanoic acid + benzoic acid | 8.92 |
| 1238 | 98656 | trans-2-nonenal | 4.80 |
| 1276 | 30412 | 4-terpineol | 1.48 |
| 1282 | 69477 | decanal | 3.38 |
| 1292 | 4114158 | naphthalene-d8 (internal standard) | 200.00 |
| 1323 | 49450 | nonanoic acid | 2.40 |
| 1371 | 9726 | 2,4-decadienal | 0.47 |
| 1389 | 56366 | glyceryl triacetate (Triacetin) | 2.74 |
| 1395 | 29274 | 2,4-decadienal | 1.42 |
| 1409 | 651914 | butyl butyrolactate | 31.69 |
| 1415 | 32938 | decanoic acid | 1.60 |
| 1435 | 189808 | piperonal | 9.23 |
| 1479 | 4648073 | vanillin | 225.96 |
| 1504 | 66365 | geranyl acetone | 3.23 |
| 1525 | 63172 | ethyl vanillin | 3.07 |
| 1559 | 240640 | butylated hydroxy toluene (BHT antioxidant) | 11.70 |
| 1578 | 39991 | myristicin | 1.94 |
| 1771 | 281540 | ethyl myristate | 13.69 |
| 1821 | 56257 | 6,10,14-trimethyl-2-pentadecanone | 2.73 |
| 1896 | 35675 | methyl palmitate | 1.73 |
| 1968 | 1111227 | ethyl palmitate | 54.02 |
| 2215 | 672851 | ethyl linoleate | 32.71 |
| 2222 | 573475 | ethyl oleate | 27.88 |
| 2259 | 14192 | ethyl stearate | 0.69 |
| | | Total Out-Gas Products @100C/30 Min. (excluding internal standards) | 494.51 |

(*Id.* ¶ 4.)

Plaintiffs allege that they expected the Product not to contain artificial flavors and to only derive its taste from natural flavors, "because that is what the label said." (*Id.* ¶ 94.) To that end, Plaintiffs reference numerous sources to suggest consumers avoid artificial flavors for health and nutrition purposes. (*Id.* ¶¶ 7, 12–23.) Plaintiffs allege the Product contains ethyl vanillin, which they claim is "[n]ever a [n]atural [f]lavor" and is an artificial flavor pursuant to 21 C.F.R. § 101.22(a)(1). (*Id.* at ¶¶ 24–37.) Plaintiffs thus claim the ingredient list is misleading because it

3

fails to identify and disclose "artificial flavors," as evidenced by the use of ethyl vanillin. (*Id.* ¶¶ 42, 47–49.)

Plaintiff Valerie Santiful purchased the Product on more than one occasion, including in December 2019, at a Wegmans store in Virginia Beach, Virginia. (*Id.* ¶ 72.) Plaintiff Tameka Rhoden purchased the Product on more than one occasion, including in November 2019, at a Wegmans store in Montvale, New Jersey. (*Id.* ¶ 73.) Plaintiffs alleged that they "expected the Product to not contain artificial flavor and only get its taste from natural flavors, because that is what the label said." (*Id.* ¶ 94.) Plaintiffs "expected only natural flavoring ingredients and did not expect artificial flavor in the form of ethyl vanillin." (*Id.* ¶ 100.) Had Plaintiffs known about the true source of the vanilla flavor in the Product, they would not have purchased it or would have paid less for it. (*Id.* ¶¶ 56, 77, 96.) Plaintiffs allege that they are not alone in this regard and that consumers are willing to pay more for products labeled "vanilla—naturally flavored" instead of "artificially flavored." (*Id.* ¶¶ 47, 51.) Plaintiffs allege the Product's branding and packaging misled consumers who want a natural vanilla product. (*Id.* ¶¶ 47–49, 53, 121.) Plaintiff alleges Defendant sold the Product at a premium price of approximately $2.89 per 14 ounces, as compared to other similar products presented in a non-misleading way. (*Id.* ¶¶ 54, 56–57.)

## II.     Procedural Background

On November 20, 2020, Plaintiffs filed the First Amended Complaint ("FAC") on behalf of all purchasers of the Product who reside in New York, Virginia, and New Jersey, asserting claims against Defendant for (1) violations of New York General Business Law Sections 349 and 350, (2) negligent misrepresentation, (3) breach of express warranty, (4) breach of implied warranty of merchantability, (5) violations of the Magnuson Moss Warranty Act, (6) fraud, and (7) unjust enrichment. (ECF No. 12.) Plaintiffs sought both monetary damages and injunctive relief that would require Defendant to correct the Product's allegedly misleading label. (*Id.*) Defendant moved to dismiss the FAC on February 26, 2021. (ECF No. 16.) The Court's Opinion on January 28, 2022

("First Opinion & Order") granted Defendant's motion to dismiss the FAC for failure to state a claim and granted Plaintiffs leave to file a second amended complaint. (ECF No. 20.) Plaintiffs filed a Second Amended Complaint on February 28, 2022, asserting the same seven claims against Defendant from Plaintiffs' FAC. (ECF No. 21.) Defendant moved to dismiss the Second Amended Complaint on May 16, 2022. (ECF No. 25.) Defendant filed a memorandum of law in support of Defendant's motion to dismiss on May 16, 2022. (ECF No. 26.) Plaintiffs filed a memorandum of law in opposition to Defendant's motion to dismiss on May 16, 2022. (ECF No. 27.) Plaintiffs withdrew both their claim for negligent misrepresentation and their request for injunctive relief. (*Id.*) Plaintiffs seek monetary damages, expenses, and reasonable attorneys' fees. (ECF Nos. 21, 27.) Defendant filed a reply on May 16, 2022, in support of Defendant's motion to dismiss Plaintiffs' Second Amended Complaint (ECF No. 28.)

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Factual allegations must "nudge[] [a plaintiff's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A claim is plausible when the plaintiff pleads facts that allow the court to draw a reasonable inference that the defendant is liable. *Iqbal*, 556 U.S. at 678. To assess the sufficiency of a complaint, the court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). While legal conclusions may provide the "framework of a complaint," "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678–79.

## DISCUSSION

Plaintiffs assert claims against Defendant for (1) violations of New York's General Business

Law Sections 349 and 350, (2) breach of express warranty, (3) breach of implied warranty of merchantability, (4) violation of the Magnuson Moss Warranty Act, (5) fraud, and (6) unjust enrichment. (*See* SAC.) Defendant moves to dismiss all claims for failure to state a claim pursuant to Rule 12(b)(6). (*See* Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint ("Def. Mem."), ECF No. 26.) The Court addresses each claim below.

I. **New York General Business Law Claims**

Plaintiffs' first cause of action arises under New York's General Business Law ("GBL") Sections 349 and 350. Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce," and Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce." GBL §§ 349 & 350.

To state a plausible claim under Sections 349 and 350 of the GBL, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (citing *Koch v. Acker, Merrall & Condit Co.*, 944 N.Y.S.2d 452, 452 (2012)). While plaintiffs are not required to meet the heightened pleading requirements of Rule 9(b) for their claims, *see Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 575–76 (S.D.N.Y. 2021), "plaintiffs must do more than plausibly allege that a 'label might conceivably be misunderstood by some few consumers.'" *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 160 (S.D.N.Y. 2021) (quoting *Sarr v. BEF Foods, Inc.*, No. 18 Civ. 6409 (ARR) (RLM), 2020 WL 729883, at *3 (E.D.N.Y. Feb. 13, 2020) (internal quotation marks omitted)). Plaintiffs must "plausibly allege that a significant portion of the general consuming public or targeted customers, acting reasonably in the circumstances, could be misled." *Id.* (quoting *Sarr*, 2020 WL 729883, at *3 (internal quotation marks omitted)).

"The primary evidence in a consumer-fraud case arising out of allegedly false advertising is, of course, the advertising itself." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013).

"Context is crucial" to determining whether a reasonable consumer would have been misled by an advertisement. *Id.* "For example, under certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception." *Id.* "Although the question of whether a business practice or advertisement is misleading to a reasonable consumer is generally a question of fact, it is 'well settled that a court may determine as a matter of law that an allegedly deceptive [practice or advertisement] would not have misled a reasonable consumer.'" *Wynn v. Topco Assocs., LLC*, No. 19 Civ. 11104 (RA), 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021) (internal citation omitted) (quoting *Fink*, 714 F.3d at 741).

In this Court's Opinion & Order dismissing Plaintiff's FAC, this Court made clear that "[t]o be viable, any amended complaint would have to plead non-conclusory, substantiated allegations to the effect that (a) a reasonable consumer would actually believe that the word 'vanilla' on the product's front label implies that the product's flavoring is predominantly from genuine vanilla extract; and/or that (b) the ethyl vanillin, vanillin, maltol, and piperonal used in Defendant's vanilla cake mix product are not derived from natural sources, such that they must be deemed artificial flavors." (Opinion & Order at 17.) Plaintiff's SAC abandons its FAC allegations that the Product's flavoring is predominantly from genuine vanilla extract, and instead, the SAC alleges the Product is not "Naturally Flavored" and "contains artificial flavors," namely "ethyl vanillin." (*Compare* FAC ¶¶ 4–6 *with* SAC ¶¶ 3–5.) As such, the SAC does not rely on whether a reasonable consumer would believe the Product's flavoring comes predominantly from genuine vanilla extract. Instead, Plaintiffs simply allege that the Product's front label states the Product's flavoring is natural—not artificial—and thus the reasonable consumer is misled insofar as the Product contains artificial flavors, like ethyl vanillin. (SAC ¶¶ 3–5.) In effect, the viability of Plaintiffs' SAC depends on whether Plaintiffs can substantiate that ethyl vanillin is indeed present in the Product and "not derived from natural sources, such that [it] must be deemed [an] artificial flavor[ ]." (Opinion & Order at 17.)

Plaintiffs, however, fail to plausibly allege that ethyl vanillin is present in the Product. And

7

even if Plaintiffs did so, Plaintiffs fail to "substantiate" that ethyl vanillin is "not derived from natural sources." (*Id.*) The majority of the SAC broadly discusses how ethyl vanillin is never a natural flavor. (SAC ¶¶ 12–37.) To substantiate their allegations, Plaintiffs included the results of a laboratory analysis, which were interpreted solely by their attorneys, with no support from, or even identification of, the researcher who conducted the analysis, or of any other expert. (SAC ¶¶ 4, 43.) As clearly stated in the Court's First Opinion & Order, Plaintiffs' failure to include "information as to the testing methodology, the date, time, or place of the testing, who conducted the testing, and what the exact product tested was" is "insufficient to support Plaintiffs' otherwise conclusory statements as to the ingredients of the Product." (Opinion & Order at 10–11.) *Accord Myers v. Wakefern Food Corp.*, No. 20 CIV. 8470 (NSR), 2022 WL 603000, at *4 (S.D.N.Y. Mar. 1, 2022) ("But the Court concludes that Plaintiff has failed to sufficiently allege that Defendant misrepresented that its Product contains no artificial flavors. To begin, Plaintiff claims that the Product was allegedly subjected to a laboratory test, but she fails to provide any details whatsoever about this laboratory test entailed. She does not, for instance, describe the testing methodology followed, the specific date, time, or place of the testing, who conducted the testing, the qualifications of the testers, etc."). Despite this Court's clear guidance in the First Opinion & Order, Plaintiffs failed to provide this information regarding the details of their laboratory analysis. Because the presence of ethyl vanillin is supported *solely* by the results of an unsubstantiated laboratory analysis, this Court sees no "non-conclusory, substantiated allegations" to suggest ethyl vanillin is present in the Product (*id.* at 17)—especially where the alleged quantity of ethyl vanillin is 3.07 parts per billion, 75 times less than the quantity of vanillin (SAC ¶ 4), *cf. Sharpe v. A&W Concentrate Co.*, 481 F. Supp. 3d 94, 102 (E.D.N.Y. 2020) (declining to dismiss complaint where "existence of ethyl vanillin" was "*exponentially* present compared to natural vanilla" but "never explicitly disclosed to

consumers") (emphasis added).[3]

In the absence of any *substantiated* allegations that artificial flavors, like ethyl vanillin, are present in the Product, this Court concludes that the Product's labeling would not mislead a reasonable consumer. Plaintiffs' claims under GBL §§ 349 and 350 are dismissed with prejudice. Therefore, it is not necessary to reach Defendant's argument that these claims are preempted by federal law. *See Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 806 (S.D.N.Y. 2021).

## II.   Other Claims

Plaintiffs also assert claims for breach of express warranty, breach of implied warranty of merchantability, violation of the Magnuson Moss Warranty Act, fraud, and unjust enrichment. These claims, which largely hinge on the core theory of consumer deception, all fail as a matter of law. *See Barreto*, 518 F. Supp. 3d at 806 (dismissing claims for . . . breach of warranty, fraud, and unjust enrichment on the basis that the court "already determined that [plaintiff] has failed to allege that the product's labeling would be likely to deceive or mislead a reasonable consumer").

### a.   Breach of Express Warranty

To state a claim for an express breach of warranty under New York law, plaintiffs must plead "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014).

As discussed above, Plaintiffs provide no factual basis to suggest the Product contains ethyl vanillin, let alone that the alleged inclusion of scant amounts of artificial flavoring renders the Product's label "material" misstatement. Accordingly, Plaintiffs' breach of express warranty claim

---

[3] The scarce quantity of ethyl vanillin in relation to vanillin raises the question: would a reasonable consumer still believe the Product's label is misleading if that consumer knew natural flavoring was 75 times more prevalent than artificial flavoring? This Court sees no non-conclusory, substantiated allegations in the SAC to answer the question in the affirmative.

9

fails.

### b. Breach of Implied Warranty of Merchantability

A breach of implied warranty of merchantability occurs when the product at issue is "unfit for the ordinary purposes for which such goods are used." N.Y. U.C.C. Law § 2-314. The SAC claims that Plaintiffs wanted to consume a cake mix without artificial flavors. (SAC ¶¶ 74–75.) Plaintiffs' allegations do not otherwise state that the cake mix is unfit for human consumption. (SAC ¶ 115.) *See, e.g.*, *Barreto*, 518 F. Supp. 3d at 807 (dismissing implied warranty of merchantability claim because "there were no allegations that the soymilk beverage was unfit for . . . human consumption"); *Silva v. Smucker Nat. Foods, Inc.*, No. 14-CV-6154 (JG), 2015 WL 5360022, at *11 (E.D.N.Y. Sept. 14, 2015) (dismissing implied warranty claim because "[w]here the sale of a food or beverage is concerned, courts have ruled that the product need only be fit for human consumption to be of merchantable quality."). Plaintiffs argue this claim is viable because the Product was not "[Fit] for [its] Particular Purpose" because Plaintiffs "rel[ied] on the [Defendant's] skill or judgment to select or furnish suitable goods," without artificial flavoring. (SAC ¶ 112; Plf. Opp. at 9.) But even on this basis, the claim fails for the same reasons as the express warranty claim. *See Barreto*, 518 F. Supp. 3d at 807.

### c. Magnuson Moss Warranty Act

Plaintiffs bring a claim under the Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq.* (SAC at 14.) "To state a claim under MMWA, plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law." *Garcia v. Chrysler Gr. LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015). Defendant argues that this claim should be dismissed because Plaintiffs do not identify any statements on the label that warrant a product free from defect, nor do they identify anything on the label that constitutes a promise that a product will meet a specified level of performance as required to state a sufficient MMWA claim. (Def. Mem. at 17.) Defendant further argues that the only statement Plaintiffs identify as constituting any

warranty is that the product is called "vanilla cake mix," which is not sufficient to maintain an MMWA claim because the challenged statements are merely a product description and governed by the FDA, and not a "warranty" against a product defect over a specific time period. *Id.*; *see Chufen Chen v. Dunkin' Brands, Inc.*, No. 17-CV-3808 (CBA) (RER), 2018 U.S. Dist. LEXIS 234591, at *16 (E.D.N.Y. Sep. 17, 2018). The Court agrees, and for the same reasons discussed above, finds Plaintiffs' MMWA claim fails.

### d. Fraud

To state a claim of fraud under New York law, Plaintiffs must allege (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff. *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997). A claim of fraud must be alleged with the particularity required by Federal Rule of Civil Procedure 9(b), which "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 403 (2d Cir. 2015) (quotation marks omitted). Rule 9(b) permits a plaintiff to allege scienter generally, but the Second Circuit has "repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent." *United States ex rel. Tessler v. City of New York*, 712 Fed. App'x 27, 29 (2d Cir. 2017) (summary order) (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)).

As discussed above, the Court finds that Plaintiffs have failed to allege a material misrepresentation of fact or omission because Plaintiffs have not plausibly alleged the Product contains artificial flavors. Furthermore, Plaintiffs fail to plead facts that give rise to fraudulent intent. The SAC merely contains conclusory statements that Defendant's intent "is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements

11

were neither true nor accurate and mislead consumers." (SAC ¶ 121.) This is insufficient. *See Barreto*, 518 F. Supp. 3d at 808 (dismissing the fraud claim for the same reasons). Accordingly, Plaintiffs' fraud claim fails.

### e. Unjust Enrichment

Under New York law, an unjust enrichment claim requires "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d. Cir. 2000) (internal quotation marks omitted). Because Plaintiffs' unjust enrichment claim is based on the same allegations as their defective claims for consumer deception, Plaintiffs' unjust enrichment claim also fails. *See Barreto*, 518 F. Supp. 3d at 808–09.

## III. Leave to Amend

Plaintiffs requested, in the alternative to denying the motion to dismiss, for leave to file a Third Amended Complaint. (Plf. Opp. at 11.) "The Second Circuit has instructed courts not to dismiss a complaint 'without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Howard v. Brown*, No. 15-CV-09930 (ER), 2018 WL 3611986, at *6 (S.D.N.Y. July 26, 2018) (quoting *Shabazz v. Bezio*, 511 F. App'x 28, 31 (2d Cir. 2013)). However, where "the Court has put Plaintiff on notice of the deficiencies in his original complaint and given him an opportunity to correct these deficiencies in an Amended Complaint, but Plaintiff has failed to do so, dismissal with prejudice is appropriate." *Coon v. Benson*, No. 09-CV-00230 (SCR) (LMS), 2010 WL 769226, at *4 (S.D.N.Y. Mar. 8, 2010). Here, the Court previously detailed the deficiencies in Plaintiffs' First Amended Complaint and provided Plaintiffs leave to amend. However, Plaintiffs' Second Amended Complaint fails to address the same deficiencies noted in the previous complaint. Plaintiffs do not explain how they can cure the deficiencies identified in this Opinion.

Accordingly, the Court dismisses the claims in the SAC with prejudice and without leave to replead.

## CONCLUSION

For all the foregoing reasons, Defendant's motion to dismiss is GRANTED pursuant to Rule 12(b)(6). Plaintiffs' Second Amended Complaint is DISMISSED in its entirety without leave to replead. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 25 and to close the case.

Dated: March 10, 2023  
White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge